May it please the Court, Daniel Diskin for the Petitioner. The Board of Immigration Appeals erred in this case in concluding that the petitioner was subject to the persecutor bar. Contrary to the Board's decision, the petitioner in this case did not assist or otherwise participate in persecution. It is true that the petitioner worked at a highway checkpoint in Eritrea, and that the Eritrean security forces sometimes, on occasion, brought prisoners through the checkpoint. However, those prisoners were in the custody of the security forces. Moreover, the petitioner was engaged in legitimate law enforcement duties at the checkpoint, which is a critical factor. The Board of Immigration Appeals was required to consider the overall circumstances and the totality of the relevant conduct under case law. Instead of considering all of those factors, the Board focused solely on one portion of the testimony in this case, but did not consider two critical factors in particular. First, that the detainees were under the custody of the security forces who were transporting them through the checkpoint, and second, the legitimate law enforcement activities that the petitioner was engaged in. The record reflects, for example, that his unit was tasked with searching vehicles, including those involving the security forces for illegal contraband, and identifying the identity of the security forces bringing the detainees through the checkpoint. These are quintessential law enforcement activities. The Board was required to consider, again, the totality of the relevant conduct, and failed to do so in this case, contrary to this Court's decision in Abdel Masih. What did the Board consider? I'm sorry, Your Honor? You were telling me what the Board should have considered but didn't. Correct. You agreed that the Board did consider some of the circumstances. The Board did consider some of the circumstances, but they focused on one portion of testimony. Essentially, he was asked, you know, if you weren't watching them, would the detainees have escaped? That's what they focused on. That question is kind of ambiguous. I mean, if you take it literally, these prisoners were in the custody of the security forces. Is it possible to believe on a literal level that they would have escaped if he alone weren't watching them? I think what he was saying is that if no one were watching them, they would have escaped. Is it undisputed that some of the detainees were tortured? I think they were definitely beaten. That's clear. And so, it's not disputed that they were mistreated, but the question is whether he assisted or otherwise participated in the persecution of the detainees. So I don't think that the harm inflicted on the detainees is the main question before the Court. It's whether he assisted or otherwise participated in the harm. I understand that, but before we talk about whether or not he assisted in some harm, we have to determine whether or not there was some. We agree there was. You said there would be. Yes, Your Honor. Yes, Your Honor. I agree that they were harmed. I'm not going to dispute that, but we are disputing that he assisted in any harm inflicted upon them or that would be inflicted upon them in the future. So I think they had a duty, again, to not just look at one snippet of testimony, which on a literal level doesn't even make any sense, but to consider the record as a whole. And that's clear from this Court's case law. So what case, what is the best case that we should look at to distinguish between the abuser, the person who's actually doing the beating or torturing or what have you, and a lesser actor, for instance, one who stands guard while that happens, one who transports but doesn't participate in? Is there some type of case law you can cite us to that will clearly delineate the relative responsibilities such that it might impact a case like this? Yes, Your Honor. So there's no case directly like this one, but I think a good illustrative case is the Second Circuit's decision in Wang. That case involves someone who briefly—she worked as a nurse at a hospital in China. It has to do with China's one-child policy. And she briefly on one occasion stood guard. But they looked in that case, though, at the totality of the relevant conduct and really took a nuanced view of the overall circumstances. You know, and in a certain sense, it's more grave than this case because she was for that time, as I understand the case, the sole person guarding them, whereas here they were in the custody of the security forces. But they looked at the overall circumstances and her behavior as a whole. I think that's a direct quote from the case. You need to look at the behavior as a whole. Another case is the Ninth Circuit's decision in Kumar, which involves someone who also worked as a guard, kind of in a sentry function. And again, they placed a great deal of emphasis that he was engaged in legitimate duties as opposed to someone who worked at a guard at a Nazi concentration camp, like in Fedorenko. But in all the cases, there's not like a bright-line rule. They have a—you know, it involves a continuum. You basically need to look at whether it falls on one side of the continuum or another. And I think that's what this Court was saying in Vazquez, you know, the case we focused on, which was a denaturalization case, of course, but basically you look to the persecutor bar and emphasize that all the case law talks about a continuum between sort of indirect peripheral conduct on the one hand, and on the other end, active, direct, and integral participation. So I think the immigration judge's job is to look at all the circumstances and see on which end of the continuum— No, I think our reading is that the Court's describing two ends of a continuum, so that it doesn't—you know, if you read it literally, that's what it says, but I think the best way to understand it is they're kind of summarizing the case law, but they looked at the Eleventh Circuit's decision in Chen, of course. So I think the question is not to say whether it literally checks all three boxes, though I think it often will, but whether it falls closer to that side of the continuum or the other side of the continuum. It's not—it's supposed to be a somewhat flexible test in that, you know, it's hard to foresee every factual circumstance that could arise, but you need to see which side of the continuum. So under your preferred test, when—what sort of guard activities, when would guard activities rise to the level of aiding persecution? Well, I mean, it's hard to give an answer that encompasses every situation, but certainly if someone is directly standing guard at a prison cell and is armed, that's actually, as I believe the factual circumstances in Chen, that is definitely a much clearer case, you know, that someone's aiding, assisting in persecution when they're—they have custody and control over the detainees and they're, you know, performing the function of a traditional prison guard, then that's a clearer case, I think. But in this case, I don't even think it's necessarily accurate to say he was a guard. They had their own guards. They were coming through the checkpoint with their own guards. So he was really someone tasked with searching vehicles for contraband and other legitimate activities and he did watch the detainees briefly for, you know, something like five or ten minutes. But given that the overall circumstances, which the board did not properly consider, he wasn't assisting in persecution in the function of a guard. So I think, you know, this—a lot of— You say he watched them for five or ten minutes. You don't mean just once. You mean for five or ten minutes at a time. Yeah. So each time that they did— Each time. That is true, Your Honor. All right. So—and I really think it's important that, you know, the case law speaks to the need for a particularized, fact-specific inquiry. That's also part of what the standard in Vasquez says. So that means that you need to look at all of the relevant factors in the case, which the board, again, did not do in this situation, in order to understand whether the persecutor bar actually applies. So again, with respect to the standard, we would argue that the court should adhere to Vasquez. The government says that you should defer to the board's decision in matter of D.R. 2. As we argued, I don't actually think there is a conflict between those two cases. But, you know, there's no reason that you wouldn't defer to your own case in Vasquez. Matter of D.R. 2, though, even if that were to be followed, the standard still would support our argument. They talk about the need to apply the continuum in Fedorenko. That's, you know, the touchstone case where the case law originates from. And that's still what I talked about earlier. You look at whether it's indirect and peripheral on the one hand, or whether it's active, direct, and integral, or toward that end. So the board does use this other language in the matter of D.R. 2. I think they say material, and then they talk about whether it contributed to the ultimate harm. But really, they also are applying the continuum. So it's not in conflict with Vasquez. I think that's the case. In other words, you should follow Vasquez, which is consistent with the board's decision. I think, you know, so in our view, this case should be remanded because the board did not consider key factors. And you don't necessarily have to go beyond that. But I think if you're going to look at the evidence as a whole, it's strong enough that it compels the conclusion that the petitioner did not assist or participate in persecution in this case. You have to look at all the factors. But when you do, it's clear from the context that the security guards had control of the detainees. And moreover, the record strongly indicates that the petitioner was not even armed at the checkpoint. This is in the credible fear interview that's part of the record. You know, he was at, he made clear that he did receive some type of weapons training initially when he was in, after he was conscripted into national service. But he was asked if he ever used the weapons outside of training. And his answer strongly suggests that he did not. You know, that he was just given that training. So I think that only underscores that the board made a serious error when it didn't take into consideration that these detainees were under the control of the security forces. And that's only a matter of common sense. They had been arrested by these people. You know, they're transporting them through a checkpoint. But it's not like, especially in a country such as Eritrea, which is well known to be one of the worst human rights abusers in the world, it's not like those security forces are going to give up custody of these people during the limited amount of time that they waited at checkpoint. They obviously had control of them. So I just think it's, it's kind of ignoring reality to say that, oh, you know, he was asked if they would have fled if he wasn't watching them. And that's all that, you know, he said no. But obviously he's indicating that if no one was watching them, of course they would have escaped at that point. But specifically the security forces who are the actual ones who had custody of them were not watching them. That they would have, that clearly they would have escaped at that point. However, the board didn't discuss when it did its own review of the record that the security forces were the ones transporting the detainees and had control over them. And that's just a critical factor in this case. And the government maintains in its brief that control is not the issue, that assistance is, but that's, that's a false dichotomy. Obviously who has control and custody of the detainees is a critical factor that's in the overall conduct context and whether the petitioner actually assisted or otherwise participated in persecution. And the case law that we cited I think only makes that clear. There's cases in which people clearly have control over the detainee and Chen's an example and they talk about that. That only underscores that, you know, when you're a guard of a sort at a traditional prison and you're standing guard over someone in that, that role, that's very different from what happened here. This is not someone who was performing what I would call traditional guard duty. He was really primarily engaged in legitimate law enforcement activities such as searching vehicles for contraband. And in fact, the only reason that makes sense as to why the people even got out of the vehicle in this case is so that they could do the same thing here. They needed to search the vehicle to see if it had illegal contraband. That's why the detainees and the security forces exited the vehicle for the brief period that they did before, during these stops so that they could proceed after that through the checkpoint. So I think this is a case where his duties are even during these stops that are in question are inextricably intertwined with legitimate law enforcement duties. So it would be, it would be very odd to say that someone who's engaged in legitimate law enforcement duty was engaged in persecution. Especially when, again, these detainees had their own security forces that were the ones, as he made clear, he said they're not, they weren't his prisoners. They were the security force's prisoners. So I just think this is a case where the board ignored the overall context and failed to consider the petitioner's behavior as a whole and key factors in this case. So with that, I see that my time's approaching and I'll just rest for the, after that. Thank you, counsel. Mr. Stone. Good morning. You may proceed. Thank you. Good morning. My name is Paul Stone. I represent the Respondent Attorney General of the United States. Now the primary issue before the court is whether the petitioner has identified evidence that would compel the conclusion that the persecutor bar doesn't apply. But his own testimony provides substantial evidence showing that it does apply. Over more than a year, once a week or twice a month, he and his fellow soldiers would guard three or four prisoners. These were people he admitted were captured because they tried to flee the country and the government saw them as political enemies. He saw evidence of prior physical abuse. He saw them beaten as they got on and off the trucks. He knew they would likely be subject to lengthy imprisonment or death. He also admitted that he would guard the prisoners along with guarding their captors and if he and his fellow soldiers didn't watch them, they would try to escape. Now country condition evidence is also consistent with his claims about the government treating those trying to escape the country as political enemies. In fact, he claimed his basis for asylum was that very claim and that's ultimately why he received cat deferral was because his fear of being harmed for fleeing the country. As to the argument that the board erred in not considering the issue of control, the board did consider it. It's on page five of its decisions. But again, control isn't critical in this case because he admitted that he watched the prisoners and if they hadn't, they would have tried to escape. The prisoners don't know or don't particularly care that he doesn't have control over them. If they see him watching them, they know that if they try to escape, he may alert the people who do have control over their captors. And the fact that he was part of a large group that was watching them doesn't diminish his responsibility either. So, and also the fact that he was engaged in legitimate duties doesn't undermine the board's decision either. Again, the board considered the issue also on page five. Legitimate duties doesn't constitute compelling evidence because his involvement in those legitimate duties doesn't mean he didn't assist in persecution. And it doesn't mean that those people weren't persecuted. The cases where people were found to have not assisted in persecution when it wasn't their primary job were very different. They involved people, for example, who only helped once. In Wang, in the Second Circuit, a nurse watched patients who were to undergo forced abortions for ten minutes. After ten minutes, she took one to the restroom and helped her escape. She was then physically abused and fired. That's very different from this case where the petitioner watched over these political prisoners repeatedly for more than a year. The other cases involved people where there's no evidence that they specifically guarded political prisoners. Like Kumar in the Ninth Circuit, where there's no indication that he ever specifically guarded the victims of persecution, just the military base itself. And then again, Diaz-Zanada in the Sixth Circuit, where there's no indication... That's where she was collecting intelligence for the military. And there's no indication that the information she provided to the military was used in any way for persecution. The problem in those two cases was the board had presumed under the old matter of Fedorenko, that because those organisations engaged in some persecution, they necessarily were assisting in that. The Second Circuit case in Zimbabwe also shows that legitimate activities don't immunise persecutory conduct. In that case, the person worked as a driver for about two years and only on three to five occasions he drove women to forced abortions. The fact that he had engaged in legitimate employment for over two years, except for those three or five occasions, did not diminish at all his responsibility on the persecutor bar. And again, by contrast here, the petitioner directly guarded the victims of persecution numerous times and made no effort to escape until he was imprisoned himself and made to do hard and abusive labour because he won AWOL. So we do agree for the purposes of this case that Chen and D.R. do dictate the same outcome. Chen, which was cited extensively in this court's decision in Vasquez. This is because while Chen did use the terms active and passive, which the board explicitly disapproved of, it didn't apply them in the way the board was concerned. It was concerned because at least one Ninth Circuit case implied that passive activities like acting openly and only as a guard was insufficient to trigger the bar. The board disagreed, and frankly so does Chen, because in that case the petitioner watched over women that were going to undergo forced abortions, but she didn't arrest them. She didn't put them in the room and lock the door. Apparently somebody else did that. She only watched them when they were in that locked room. So there was no indication she ever had to stop anyone from escaping. So Chen already disagrees that passive conduct like that is not covered by the bar. D.R. rejected the notion that passive conduct isn't subject to the bar. So unless the court has any questions, I'll sum up that substantial evidence supports the board and immigration judge's determination that the persecutor bar applies to petitioner's asylum and withholding application. He guarded prisoners who had been beaten, were beaten in front of them and on their way to potential and lengthy prison sentences and death for attempting to escape Eritrea and labeled an enemy of the state. He also admitted that he and his fellow soldiers, had they not guarded them, they would have attempted to escape. By helping to prevent their escape, he assisted in their persecution. We urge the court to deny the petition for review. Thank you. Thank you, counsel. Rebuttal. Your honors, so one issue I'd like to make clear. So the opposing counsel said that the board did address the issue of control. We made certain arguments in our appellate brief that the board acknowledged that we made, but they didn't really address them. If you look at the petition carefully, they said a petitioner, I mean, in fact, basically that the arguments had been raised, they acknowledged it, but then they went on to do their own analysis of the petition. They did their own analysis of the record and they repeated the errors that the board had made below. So when you look at when they addressed the issue of assistance in persecution, they didn't include in their analysis in that paragraph of their decision that the key fact, the security forces were the ones that had control over the detainees. It's not enough for them to briefly acknowledge in a cursory fashion that the argument was raised. They need to properly analyze it themselves. And again, with respect to the need to examine the totality of the circumstances, I respectfully didn't hear anything my opposing counsel said today that reflects that there's a justification for the board failing to consider the two key critical factors that I mentioned. One, that the security forces had control over these detainees and two, that the petitioner was engaged in legitimate law enforcement activities. Now, he cites various other cases, but I think one of the main things to take away from these cases is that particularly given the grave stakes and the very serious ramifications of holding someone subject to this persecutor bar, it's incumbent upon both the board and the immigration judge below to consider all of the circumstances. In this case, that clearly necessitated a careful examination of the fact that the security forces were the ones bringing these people through the checkpoint. And that's just something that is missing in this case, frankly, from both decisions. And then that's also a factual issue. So with the record below, I think the board's decision is fundamentally incomplete and I think there's a need for fact-finding to take place in this case that didn't take place. So unless there's any further questions, I would rest there. Thank you. Thank you.